UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE

| | |
|---|---|
| THE AD HOC COALITION OF AMERICAN SAP PRODUCERS, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   Court No. 23-00010 ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) ) |
| and | ) ) |
| LG CHEM, LTD., | ) ) ) |
| Defendant-Intervenor. | ) ) |

<u>DEFENDANT-INTERVENOR LG CHEM, LTD.'S COMMENTS
IN OPPOSITION TO COMMERCE'S REMAND DETERMINATION</u>

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999

J. David Park
Henry D. Almond
Kang Woo Lee
Gina M. Colarusso
Archana Rao P. Vasa

*Counsel to LG Chem, Ltd.*

Eric Johnson

*Consultant to LG Chem, Ltd.*

Dated: August 27, 2024

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    STANDARD OF REVIEW ................................................................................. 8

IV.     ARGUMENT ...................................................................................................... 8

        A.      Commerce's Revised Model Match Remains Unsupported by Substantial
                Evidence .................................................................................................. 10

        B.      Commerce's Remand Results Fail to Reweigh Record Evidence Which
                Detracts from the Evidence it Claims Supports the Final Remand
                Determination ......................................................................................... 15

        C.      Commerce Must Address the Court's Remand on Plaintiff's Distortion
                Arguments ............................................................................................... 21

V.      CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
    992 F.Supp. 2d 1285 (Ct. Int'l Trade 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir.
    2015) ........................................................................................................................8

*Bohler Bleche GmbH & Co. KG v. United States*,
    324 F.Supp. 3d 1344 (Ct. Int'l Trade 2018) ........................................................18

*Consol. Edison Co. of New York v. N.L.R.B.*,
    305 U.S. 197 (1938) ................................................................................................8

*CP Kelco US, Inc. v. United States*,
    40 ITRD 1226 (Ct. Int'l Trade 2018), *aff'd in part, rev'd in part,* 949 F.3d
    1348 (Fed. Cir. 2020) ..............................................................................................8

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*,
    121 F.Supp. 3d 1263 (Ct. Int'l Trade 2015) ..........................................................8

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ..............................................................................8

*Pesquera Mares Australes Ltda. v. United States*,
    266 F.3d 1372 (Fed. Cir. 2001) ............................................................................15

*Sandt Technology v. Resco Metal and Plastics*,
    264 F.3d 1344 (Fed. Cir. 2001) ......................................................................14, 19

*Union Steel v. United States*,
    804 F.Supp. 2d 1356 (Ct. Int'l Trade 2011) ........................................................13

*Universal Camera Corp. v. N.L.R.B.*,
    340 U.S. 474 (1951) ........................................................................................8, 9, 15

**Administrative Determinations**

*Certain Softwood Lumber Products From Canada: Final Results of the
    Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77136
    (Dec. 1, 2020) .......................................................................................................14

## I.   <u>INTRODUCTION</u>

LG Chem, Ltd. ("Defendant-Intervenor" or "LGC"), a Korean producer and exporter of superabsorbent polymers ("SAP"), submits these comments in opposition to the June 14, 2024 redetermination on remand by the U.S. Department of Commerce ("Commerce") in the antidumping duty investigation of Superabsorbent Polymers from Korea.  Final Results of Redetermination Pursuant to Court Remand, June 14, 2024, ECF No. 42-1 (hereinafter "Remand Results").  Commerce's Remand Results were made pursuant to the Court in *The Ad Hoc Coalition of American SAP Producers v. United States*, Court No. 23-00010, Slip Op. 24-36 (CIT March 1, 2024) ("*Remand Order*").  Below, LGC addresses Commerce's insufficient explanation for its determination on remand to adopt a model match hierarchy consisting of one product characteristic, centrifugal retention capacity ("CRC") measured in just three increments of 6 g/g each.  This model match is identical to the model match Commerce adopted in its *Preliminary Determination*.  *Certain Superabsorbent Polymers From the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 87 Fed. Reg. 34,647 (Dept. Comm., June 7, 2022) ("*Preliminary Determination*") (P.R. 154); and accompanying Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Superabsorbent Polymers from the Republic of Korea (May 31, 2022) ("Prelim. IDM") (P.R. 150).

In its *Remand Order*, this Court held that Commerce inadequately supported its reasoning for adopting the model match established in its *Final Determination*.  *See Certain Superabsorbent Polymers from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 65,035 (Dept. Comm., Oct. 27, 2022) ("*Final Determination*") (P.R. 188), and accompanying Issues and Decision Memorandum for the Final Affirmative

1

Determination in the Less-Than- Fair-Value Investigation of Certain Superabsorbent Polymers from the Republic of Korea, (Oct. 20, 2022) ("Final IDM") (P.R. 184).

This Court remanded two issues for further explanation. First, the Court remanded Commerce's finding in the *Final Determination* that absorbency under pressure ("AUP"), permeability, and CRC measured in increments of 4 g/g are commercially significant characteristics which are properly included in Commerce's model match. While the Court remanded Commerce's finding on these issues, it did not mandate that Commerce adopt any particular model match methodology. In its Remand Results, Commerce reiterated the Court's analysis as to the sufficiency of record evidence showing that these product characteristics are commercially meaningful. However, in simply repeating the Court's findings in support of its prior *Final Determination* model match, Commerce overlooked its statutory obligation to support its new Remand Results with substantial evidence. To the extent Commerce does not have substantial information to support the model match it reinstated on remand, it had an obligation to further develop an administrative record to support whichever determination Commerce elects to make. Moreover, Commerce is obligated to analyze and address all record evidence, including evidence which detracts from its revised model match, to meet the substantial evidence standard. As a result, the Court should again remand this issue to require Commerce to support its revised model match with substantial evidence, solicit additional factual information from interested parties to expand the administrative record to support a particular model match methodology, or again revise its model match methodology. In any case, remand is warranted because Commerce's remand redetermination is not supported by substantial record evidence.

The Court also remanded a second issue, asking Commerce to address arguments that its *Final Determination* model match was "distortive and unusable because the same SAP product could be classified into multiple categories at LG Chem's discretion based on its chosen testing protocol, creating a significant risk of manipulation." *Remand Order* at 41-43. The Court specifically noted that Commerce "did not fully address this issue and therefore remands for such consideration." *Id.* at 43. Commerce's Remand Results are not in accordance with the Court's *Remand Order* because Commerce did not address this issue at all in its Remand Results. While we recognize that this instruction in the *Remand Order* pertained to the prior model match, the importance of ensuring that the model match is reasonable, not-susceptible to manipulation, and does not yield distorted results applies equally to this, or any, model match methodology such that Commerce should have provided additional explanation addressing the considerations from the *Remand Order*.

Before the Court now are two new issues in this proceeding: (1) whether Commerce's Remand Results are supported by substantial evidence (which includes a sufficient analysis of the evidence which fair detracts from Commerce's conclusion); and (2) whether Commerce's Remand Results accord with the Court's Remand Order. In the comments that follow, LGC details the shortcomings in Commerce's Remand Results analysis which require further remand on both issues.

## II.    **BACKGROUND**

As part of Commerce's standard practice in market economy antidumping cases, Commerce establishes a uniform hierarchy of physical characteristics to group and identify products (a "model match" hierarchy or methodology). Commerce uses this model match hierarchy to define the proceeding's control numbers ("CONNUMs") that identify identical or similar merchandise for comparison purposes. In antidumping investigations, Commerce's

practice is to seek and consider input from interested parties when developing a model match hierarchy. In this case LGC submitted extensive affirmative and rebuttal comments on the physical characteristics of SAP that Commerce should consider in establishing its model match hierarchy. LGC's submissions contained supporting documentation for its proposed model match, which is the same model match Commerce adopted in its *Final Determination*. This model match included CRC measured in 4 g/g ranges, along with the addition of AUP and permeability as key physical SAP characteristics. *See* Letter from LGC to Commerce, "LGC's Comments on Model Match Product Characteristics" (Dec. 13, 2021) ("LGC's Affirmative Model Match Comments") (P.R. 43); Letter from LGC to Commerce, "LGC's Rebuttal Comments on Model Match Product Characteristics" (Dec. 23, 2021) ("LGC's Rebuttal Model Match Comments") (P.R. 54); *see also* Letter from LGC to Commerce, "LGC's Request for Reconsideration of Model Match Determination" (Jan. 28, 2022) (C.R. 53, P.R. 93).

Plaintiff submitted affirmative and rebuttal model match comments, neither of which were accompanied by supporting evidence or documentation. *See* Letter from Petitioner to Commerce, "Petitioner's Comments on Model Match Product Characteristics" (Dec. 13, 2021) ("Petitioner's Affirmative Model Match Comments") (P.R. 42); Letter from Petitioner to Commerce, "Petitioner's Rebuttal Comments on Model Match Characteristics" (Dec. 23, 2021) ("Petitioner's Rebuttal Model Match Comments") (P.R. 49). Korean SAP producer Sumitomo Seika Polymers Korea Co., Ltd. ("SSPK") also submitted rebuttal model match comments, but ended its participation in the investigation prior to submitting any sales or cost information. SSPK's submission likewise contained no supporting documentation or factual information to support its suggested model match characteristics. *See* Letter from SSPK to Commerce, "SSPK's Rebuttal Comments on Model Match Characteristics" (Dec. 23, 2021) ("SSPK's

Rebuttal Model Match Comments") (P.R. 53); Letter from SSPK to Commerce, "Withdrawal of SSPK's Request for Voluntary Respondent Treatment" (Jan. 25, 2022) (P.R. 91).

Over a month after receiving affirmative comments from parties, and without further inquiry or analysis from the agency, on January 21, 2022, Commerce issued a brief three-page memorandum establishing the initial model match in the investigation, which contained only a single characteristic CRC, measured in the 6 g/g ranges, exactly as proposed by Plaintiff in its affirmative model match comments (*i.e.*, 1 = <30 g/g; 2 = ≥ 30 g/g but < 36 g/g; and 3 = ≥ 36 g/g). Commerce did not address any of the specific arguments either LGC or Plaintiff had raised or otherwise justify its decision. *See* Commerce Memorandum "Less-Than-Fair-Value Investigation of Certain Superabsorbent Polymers from the Republic of Korea: Product Characteristics Hierarchy" (Jan. 21, 2022) ("Commerce's Initial Model Match Hierarchy") (P.R. 89).

In its questionnaire responses, LGC continued to supplement the record with its own detailed actual sales and cost data, which supported the model match LGC proposed in its prior model match comments, and provided Commerce with information to calculation LGC's antidumping duty margin using either CONNUM alternative. *See* LGC's Section B Response (Feb. 11, 2022) at B-10–B-12 (C.R. 98, P.R. 97); LGC's Section C Response (Feb. 11, 2022) at C-8–C-10 (C.R. 100, P.R. 97); and LGC's Section D Response (Feb. 11, 2022) at D-41–43 (C.R. 105, P.R. 97). LGC also submitted comments summarizing all of the necessary record evidence and sales and cost data available for Commerce's review and model match determination. *See generally* Letter from LGC to Commerce, "LGC's Pre-Preliminary Comments" (May 16, 2022) (C.R. 178, P.R. 142).

In its *Preliminary Determination*, Commerce continued to apply the model match initially proposed by Plaintiff in its affirmative model match comments and in Commerce's initial product characteristics hierarchy. In its Preliminary Decision Memorandum, Commerce acknowledged receiving several submissions related to the model match hierarchy, but did not address any of LGC or Plaintiff's arguments or the extensive evidence placed on the record. Instead, Commerce condensed the discussion of its model match to just two paragraphs with no analysis or reference to record evidence:

> As stated above, Commerce gave parties an opportunity to comment on the appropriate hierarchy of physical characteristics used to define each product, including for defining identical and similar merchandise, within a certain deadline. We considered the comments that were submitted and established the appropriate product characteristics to use as a basis for defining the product control number of SAP in this LTFV investigation. Commerce identified one physical characteristic of the subject merchandise: centrifuge retention capacity. We instructed the respondent to use this product characteristic in its response to the AD questionnaire issued in this investigation.

> In accordance with section 771(16) of the Act, we considered all products produced and sold by LGC in the home market during the POI that fit the description of the scope of the investigation to be foreign like products for purposes of determining appropriate NVs for comparisons with U.S. sale prices. We compared U.S. sale prices to NVs based on sale prices of identical merchandise in the home market.

*See* Prelim. IDM at 7-8 (P.R. 150) (footnotes omitted).

Following the *Preliminary Determination*, LGC also provided two new analyses based on existing record information showing wide price variations among its proposed model match as compared to the *Preliminary Determination* model match. *See* LGC's Sept. 9, 2022 Case Brief and Request for Closed Hearing ("LGC Case Br.") at 20–21 (C.R. 258, P.R. 174). Plaintiff then submitted a rebuttal brief addressing model match issues, including its own analysis of LGC's reported sales and cost reporting. Petitioner's Sept. 19, 2022 Rebuttal Brief (C.R. 259, P.R. 178).

Relying upon extensive record information supplied by interested parties, including both LGC and Plaintiff, Commerce issued its *Final Determination* on October 27, 2022, addressing relevant arguments raised by both LGC and Plaintiff during the investigation.  In the *Final Determination*, Commerce adopted LGC's proposed model match.  It was only at this *Final Determination* stage that Commerce, for the first time, analyzed the entirety of the record and provided any analysis in concluding that LGC's proposed model match better captured all commercially significant product characteristics.

Following the Court's Remand Order, on May 3, 2024, Commerce released a draft remand redetermination to interested parties for comment, in which Commerce reversed its *Final Determination* model match and reverted back to its *Preliminary Determination* model match. *See* Draft Results of Redetermination Pursuant to Court Remand, *The Ad Hoc Coalition of American SAP Producers v. United States*, Slip Op. 24-00026 (CIT March 1, 2024), (May 3, 2024) ("Draft Remand Results").  Only LGC provided comments on Commerce's Draft Results. *See* Letter from LGC to Commerce, "LG Chem, Ltd.'s Comments on the Department's Draft Results of Redetermination Pursuant to Court Remand" (May 16, 2024) ("LGC's Comments on Draft Remand Results").  In its comments, LGC explained in detail that Commerce's simple revision to the *Preliminary Determination* model match was unsupported by evidence or rationale on the record of the underlying investigation, and that Commerce did not sufficiently revisit, review, and reweigh record evidence in support of its remand model match.  These flaws remain in Commerce's final Remand Results submitted to this Court and therefore further remand is required.

### III.    <u>STANDARD OF REVIEW</u>

Mirroring the standard of review that the court applies when reviewing Commerce's initial final determinations, "{t}he court will sustain Commerce's antidumping determinations on remand if they are supported by substantial evidence and otherwise in accordance with law." *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 121 F.Supp. 3d 1263, 1268 (Ct. Int'l Trade 2015); *see also CP Kelco US, Inc. v. United States*, 40 ITRD 1226 (Ct. Int'l Trade 2018), *aff'd in part, rev'd in part,* 949 F.3d 1348 (Fed. Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Importantly, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). The substantial evidence standard of review essentially asks whether, given the evidence on the record as a whole, the agency's conclusion was reasonable. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). The Court also reviews determinations made on remand for compliance with the Court's remand order. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F.Supp. 2d 1285, 1290 (Ct. Int'l Trade 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015).

### IV.    <u>ARGUMENT</u>

Where Commerce has issued a remand redetermination which differs from a prior determination which was reviewed by the Court, the Court must assess whether the decision as articulated in the remand meets the applicable standard of review. That is, the Court must decide whether Commerce's remand results are supported by substantial evidence and in accordance with law, including whether Commerce's determination properly accounts for any evidence which detracts from its conclusions. As detailed below, Commerce's revised model match is

unsupported by substantial evidence, as Commerce can only point to two conclusory statements on the record to support its Remand Results. While Commerce reiterated the Court's findings that the evidence supporting the *Final Determination* model match was flawed, Commerce did not take the steps necessary to then support its revised model match with substantial evidence. It is not enough for Commerce to say that its prior decision lacked substantial evidentiary support, Commerce must support its chosen decision with substantial record evidence. At minimum, the Court should find that the model match evidence currently on the record is insufficient to support Commerce's Remand Results and issue a second remand encouraging or directing Commerce to seek additional information from parties on this issue.

As part of the substantial evidence standard, Commerce is also required to "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp*., 340 U.S. at 488. Here, Commerce did not fulfill its obligation to reweigh whether record evidence supports or detracts from its revised model match, offering only cursory statements supported by minimal analysis and assertions that record evidence does not detract from its Remand Results. Remand Results at 9-14. In comparison to the two conclusory statements which Commerce uses as the sole support for the *Preliminary Determination* model match, LGC submitted significant factual information and analysis which directly contradict Commerce's *Preliminary Determination*. Commerce must individually address this evidence not only within the context of whether this evidence failed to support the *Final Determination*, but also how this evidence does not detract from the validity of the *Preliminary Determination* model match. As a result, the Court should issue a second remand asking that Commerce provide a full explanation as to

how all the entirety of the record evidence before (all of which was submitted by LGC) supports or detracts from its revised model match.

Second, the Court must consider whether Commerce's Remand Results accord with the *Remand Order*. Here, Commerce was asked to further consider Plaintiff's arguments as to why the *Final Determination* model match hierarchy was subject to distortion and manipulation. While Commerce did not address this issue because it reverted to its *Preliminary Determination* model match, addressing this argument is relevant to weighing the totality of record evidence. Accordingly, in a further remand Commerce should further explain why its chosen methodology is not susceptible to distortion given that the methodology risks including diverse products within a single control number.

### A.    Commerce's Revised Model Match Remains Unsupported by Substantial Evidence

In its *Remand Order*, the Court remanded Commerce's inclusion of AUP, permeability, and CRC measured in increments of 4 g/g in Commerce's *Final Determination* model match as unsupported by substantial evidence. *Remand Order* at 36-37. To address the Court's remand, Commerce simply stated that "the Court held that evidence demonstrates that AUP and PERM have no commercial significance or utility that is not already captured by the CRC product characteristic." Remand Results at 6. Commerce also claimed to have "reexamined the record and determined that there is no information that would additionally support a finding that the characteristics of AUP and PERM are commercially significant such that they should be included in the model match hierarchy." *Id*. Similarly, Commerce found "no additional evidence on the record to support a finding that categorizing CRC in 4 g/g increments results in commercially significant price or cost differences." *Id*. at 7. As a result, Commerce simply

"adopted the model match hierarchy used in the *Preliminary Determination*."  Remand Results at 7.

However, as outlined above, Commerce is obligated to support its remand redeterminations with substantial evidence.  Commerce did not support its initial *Preliminary Determination* model match with substantial record evidence, and simply reinstating its prior unsupported determination does not meet the substantial evidence standard.  Here, Commerce's remand results merely agree that its prior *Final Determination* model match was unsupported by substantial evidence.  It is not sufficient for Commerce to simply summarize the Court's rejection of Commerce's analysis of record evidence which supported its prior *Final Determination*.  Nor is Commerce's obligation to select the "least-flawed" alternative between two model match hierarchies which are both unsupported by substantial evidence (of course, LGC would not concede that Commerce's decision on remand resulted in Commerce using the least-flawed of the two alternatives).

Indeed, the Court in its *Remand Order* did not analyze and compare the two model match hierarchies and select the one it preferred for Commerce to implement; rather, consistent with the standard of review, the Court only determined that Commerce's analysis of the record evidence did not establish that Commerce's *Final Determination* was supported by substantial evidence.  Crucially, the court did not sustain or endorse the *Preliminary Determination* model match.  Rather than engage with the Court's *Remand Order*, Commerce simply agreed wholesale with the Court's analysis without offering sufficient analysis of whether record evidence supports the *Preliminary Determination* model match hierarchy adopted on remand.

The entirety of the record evidence supporting Commerce's reversion to the *Preliminary Determination* model match on remand is contained in a single paragraph:

> As such, we have adopted the model match hierarchy used in the *Preliminary Determination*, including ranges of CRC in 6 g/g increments.  Record evidence supports this determination.  The petitioner asserted both in its initial, certified comments on the model match hierarchy and throughout the investigation that CRC is "typically" measured using 6 g/g ranges that distinguish between low, intermediate, and high capacity grades of SAP.  Further, LGC's product brochure demonstrates that SAP can be "high capacity" or "low capacity," which supports the petitioner's characterization of CRC increments.  Finally, SSPK, a Korean producer and exporter of SAP, asserted that differences in CRC are accurately categorized as low, intermediate, and high capacity grades.

*See* Remand Results at 7.  As shown above, Commerce points to just two pieces of evidence from the record to support its change of model match methodology:  (1) Plaintiff's "assert{ion}" in "certified comments" that "CRC is 'typically' measured using 6 g/g ranges that distinguish between low, intermediate, and high capacity grades of SAP"; and (2) a statement from Korean producer SSPK "assert{ing} that differences in CRC are accurately categorized as low, intermediate, and high capacity grades."  *See also* Petitioner's Affirmative Model Match Comments at 1 (P.R. 42); Petitioner's Rebuttal Model Match Comments at 6 (P.R. 49); SSPK's Rebuttal Model Match Comments at 2–3 (P.R. 53).

Commerce points to virtually no factual information to support these "assertions," except the fact that LGC's product brochure references "high capacity" and "low capacity" SAP, and thus purportedly supports measuring SAP in 6 g/g ranges.  LGC's Section A Response at Exhibit A-25 (C.R. 41, P.R. 77-78).  The evidence to which Commerce cites relates to the relationship between SAP polymerization and crosslinking and absorption, and does not mention CRC.  As a result, this evidence is irrelevant to Commerce's *Preliminary Determination* model match, and certainly cannot be considered evidence which supports Commerce's model match.  Even if this evidence had some relevance to CRC (which it does not), Commerce does not explain how this single piece of evidence outweighs all the evidence demonstrating that the Preliminary Determination model match is overly simplistic.  *See* LGC's Affirmative Model Match

12

Comments at 2-3 (P.R. 43); LGC's Rebuttal Model Match Comments at 3-6 and Attachment 1 (P.R. 54-55); *see also* Petition at 18 (C.R. 2, P.R. 2).

Importantly, Commerce does not explain why this revised model match allows Commerce to make comparatively more accurate product comparisons than the *Final Determination* model match. Indeed, neither Petitioner nor SSPK provided any factual information or any rationale beyond conclusory assertions supporting the proposal to measure CRC in 6 g/g increments during the course of the investigation. LGC is likewise unaware of any record evidence from the underlying investigation which could support the *Preliminary Determination* model match.

Commerce's preliminary decision materials similarly reveal a complete lack of evidence supporting the *Preliminary Determination* model match. As provided above, both the *Preliminary Determination* and accompanying Preliminary Determination Memorandum on which Commerce now relies simply reduce the complex model match issues raised during the course of the investigation to two paragraphs, which do little more than state a conclusion. Rather than addressing the numerous issues raised by multiple interested parties in multiple submissions, the Preliminary Determination Memorandum simply concludes that "Commerce identified one physical characteristic of the subject merchandise: centrifuge retention capacity," without further commenting on the 6 g/g CRC ranges it applied. *See* Prelim. IDM at 7-8 (P.R. 150). This conclusory finding does not cite any particular evidence or provide any rationale and ultimately cannot be considered substantial evidence.

Rather than seeking additional rationale and evidence from parties which might support its Remand Results, Commerce attempts to sidestep its obligation to support its determinations with substantial record evidence by citing *Union Steel v. United States*, 804 F.Supp. 2d 1356,

1363 (Ct. Int'l Trade 2011) for the proposition that "Commerce has no obligation to justify departures from prior litigation positions used to defend unlawful determinations." *See* Remand Results at 8, n. 36. This position conflates the idea that Commerce does not have to defend *prior* litigation positions with the idea that Commerce does not have to affirmatively provide substantial evidence for its remand redeterminations. Here, LGC is not asking that Commerce defend its *Final Determination* model match. LGC is simply asking that Commerce meet its obligation to issue remand redetermination which is supported by substantial evidence and in accordance with law.

Overall, the Court cannot sustain Commerce's Remand Results if they are not supported by substantial evidence and in accordance with the law. Commerce cites just two statements which it concedes are mere "assertions" in support of the *Preliminary Determination* model match. Of course, Commerce should be, and typically is, wary of basing its factual and evidentiary decisions on assertions. *See e.g.*, *Certain Softwood Lumber Products From Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77136 (Dec. 1, 2020) and Accompanying Issues and Decision Memorandum at cmt 2 (addressing Commerce's weighing of expert reports prepared for use in Commerce's proceedings, noting that the agency "accorded less weight to arguments in reports and studies that are not supported by citations to any source and not otherwise corroborated by other record evidence."); *see also Sandt Technology v. Resco Metal and Plastics*, 264 F.3d 1344, 1350-1351 (Fed. Cir. 2001) (discussing the importance of documentary evidence in assessing the weight to afford to testimony). Here, the primary affirmative evidence Commerce has cited to support its factual determination as to the appropriate model match hierarchy and methodology are statements,

14

expressly prepared for the sole purpose of influencing Commerce's determination, and unaccompanied by supporting materials or documents.

The underlying record contains no more facts or rationales which could lend further support to Commerce's *Preliminary Determination* model match. Further, Commerce erroneously claims that it does not have an "obligation" to provide further justification for its reversion to the *Preliminary Determination* model match. As such, the Court should further remand this issue to Commerce to provide detailed reasoning as to how the *Preliminary Determination* is supported by substantial evidence, or should view the record as incomplete and direct Commerce to gather further factual information from interested parties.

**B.    Commerce's Remand Results Fail to Reweigh Record Evidence Which Detracts from the Evidence it Claims Supports the Final Remand Determination**

In its Remand Results, Commerce "disagree{d}" that it is required to "reassess record evidence to determine the most appropriate pricing analysis." Remand Results at 9. Commerce also noted that it has "considerable discretion" in developing model match methodologies. *See* Remand Results at 7-8, citing *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1384 (Fed. Cir. 2001). However, as detailed above, Commerce's remand redeterminations must be supported by substantial evidence and in accordance with law. For the Court to find that a remand redetermination meets this standard, Commerce is obligated to "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.*, 340 U.S. at 488. LGC's arguments were not limited to Commerce's consideration of the various pricing analyses advanced by Plaintiff, LGC, and Commerce itself. Rather, LGC made the broader request for Commerce to "address how the weight of all record evidence either supports or fairly detracts from its revised remand model match." *See* LGC's Comments on Draft Remand Results at 16.

To this end, LGC provided ample record evidence not only in support of its proposed model match, but also evidence which demonstrated that the *Preliminary Determination* model match was overly simplistic.  This evidence is summarized in the paragraphs that follow.

To the extent Commerce found convincing that Plaintiff and Korean exporter/producer SSPK submitted "certified" statements which supported a model match comprised only of CRC measured in 6 g/g increments, there are multiple instances in which LGC made similar certified statements which directly contradict the idea that CRC should be measured in 6 g/g increments. For example, LGC stated in a certified submission that "{t}he traditional classification in the market is to group by divisions of 4 g/g."  LGC's Affirmative Model Match Comments at 3 (P.R. 43).  LGC also stated that "even a slight difference in CRC can have a commercially meaningful impact on a downstream producer's productivity and manufacturing costs."  LGC's Rebuttal Model Match Comments at 3 (P.R. 54).  Commerce must address why it is appropriate to accord different treatment to Petitioner and SSPK's certified statements, as the only distinction between Petitioner and SPPK's statements, especially where these assertions by Plaintiff and SSPK form the backbone of Commerce's evidentiary support as indicated at page 7 of the Remand Results and quoted in full above.  Further, Commerce must also address why it relies solely on certified statements from two parties (Plaintiff and SSPK) that provide no supporting evidence or documents to corroborate their assertions, while ignoring another party's statements to the contrary when those contrary statements *are* accompanied by documentation and evidence.

In its Comments on Draft Remand Results, LGC discussed several key pieces of factual marketing information which significantly detract from Commerce's single-characteristic *Preliminary Determination* model match.  First, LGC described dated marketing materials from both Petitioner BASF and LGC which showed both SAP producers advertised the "ability to

"break{} the normal restrictions of CRC & AAP interdependency" and "overcom{ing} the trade-off relationship" between absorption capacity (as measured by CRC), AUP, and permeability. *See* LGC's Rebuttal Model Match Comments at Attachments 1 and 2 (P.R. 54-55); LGC's Comments on Draft Remand Results at 15.  In response, Commerce made the conclusory statement that this evidence "does not detract from Commerce's finding that CRC is a commercially significant product characteristic accurately measured in 6 g/g increments" without actually weighing or analyzing the extent to which this evidence undermines Commerce's revised model match on remand.  Remand Results at 13.

This evidence directly undercuts that notion that relying solely on CRC can capture all relevant physical characteristics because these technical advances broke the typical linkage between CRC and AAP (thus, with the link broken, including multiple characteristics is not simply duplicative of the single CRC characteristic).  Under the substantial evidence standard, Commerce cannot simply pick and choose which evidence to consider and analyze, and this Court should remand this case yet again to require the agency to provide actual analysis in a second remand.  Absent a further remand and consideration from Commerce, the decision as it stands is not supported by substantial record evidence.

Further, as discussed in LGC's Comments on Draft Remand, the only factual information available on the record shows that measuring CRC in 6 g/g increments (which allows a very broad 20 percent range of CRC) would cause products which are marketed as commercially distinct to fall under the same CONNUM.  LGC's Comments on Draft Remand at 16-17.  Specifically, LGC pointed to factual information on the record providing marketing materials for SAP products demonstrating that LGC and other SAP producers promote different products with less than 20 percent difference in CRC as commercially distinct, and there is no record evidence

to the contrary.  LGC Case Br. at 10-11 (C.R. 258, P.R. 174); LGC's Rebuttal Model Match Comments at Attachment 1 at 5-6, 9 (P.R. 54).  Commerce in its Remand Results stated that the existence of distinct products with less than a 20 percent range in CRC between them does not actually demonstrate a price and/or cost difference between these products, thus "this record evidence does not detract from our determination."  Remand Results at 14.  Commerce's attempt to address this evidence considerably oversimplifies the issue and the substantial evidence standard.  While price and costs effects are an important part of assessing commercial significance, more broadly, whether product characteristics are commercially significant "is determined on a case-by-case basis, but *at the very last it is a feature that is recognized in the broader industry of the subject merchandise*."  *Bohler Bleche GmbH & Co. KG v. United States*, 324 F.Supp. 3d 1344, 1349 (Ct. Int'l Trade 2018) (emphasis added).  In this case, record evidence demonstrates that commercially significant differences exist among SAP products falling under the same CONNUM under Commerce's remand model match.  This creates inaccurate product matching and distorted margin analysis which detracts from the *Preliminary Determination* model match, which Commerce should be required to analyze and weigh in a second remand.

Additionally, as discussed in LGC's Comments on Draft Remand Results, record evidence from the parallel ITC proceeding at minimum shows that the *Preliminary Determination* model match's measurement of CRC in 6 g/g ranges are incorrectly and arbitrarily demarcated.  LGC's Case Br. at 12-13 (C.R. 258, P.R. 174); *see also* Petition for the Imposition of Antidumping Duties (Nov. 2, 2021) at 18 (C.R. 2, P.R. 2).  In response, Commerce simply reiterated the Court's observation that "Commerce and the ITC use pricing products differently for different reasons" and thus "{t}he pricing products used in the ITC's parallel

analysis do not detract from Commerce's" *Preliminary Determination* model match.  Remand Results at 14.

This conclusion, which lacks any further explanation or evidence that Commerce actually weighed the record evidence before it, oversimplifies both the Court's and LGC's arguments. Rather than simply dismissing the relevance of this evidence, the *Remand Orde*r noted that "the pricing products ITA used for <u>its</u> purpose must be tethered to <u>that</u> context, if the analysis is to have any relevance in the context of an ITA investigation."  *Remand Order* at 34.  While the Court may have found this evidence unpersuasive in supporting the *Final Determination* model match, Commerce must still consider the fact that the record evidence contained in the Petition itself, which was filed on the records of *both* the ITC and ITA parallel proceedings, is inconsistent with the CRC ranges it proposed for a parallel ITC proceeding, for seemingly no particular reason.  While the ITC proceedings are separate (but parallel, and stemming from the same Petition), the Petition's task was to outline three distinct "representative SAP products." Petition at 18 (C.R. 2, P.R. 2); LGC's Case Br. at 12 (C.R. 258, P.R. 174).  Because there is no evidence supporting a finding that are no meaningful commercial differences between these individual "representative" products, at minimum, Commerce should explain why these products are appropriately treated as distinct for purposes of the ITC's analysis but not distinct for the purposes of the Commerce's analysis, or should solicit further information from the Petitioner on this point.  This explanation is key to Commerce's consideration of the weight of evidence which might fairly detract from the *Preliminary Determination* model match, and is thus necessary for Commerce's Remand Results to meet the substantial evidence standard.

LGC further submits that, consistent with the considerations articulated in *Sandt Technology v. Resco Metal and Plastics*, 264 F.3d 1344, 1350-1351 (Fed. Cir. 2001), this is a

crucial issue where the primary evidence to which Commerce cites in support of its position are *assertions* by the Plaintiff. These additional statements and positions at a minimum are probative as to the relative weight Commerce should afford to Plaintiff's assertions where those assertions appear in conflict with separate assertions and arguments (albeit where those suggested pricing products are used in a different context in the ITC's injury investigation). Moreover, while the ITC's pricing product analysis and Commerce's model match analysis are conducted in two separate arenas, the issues are fundamentally related. In the ITC's injury investigation the ITC is seeking to identify comparable groupings of products to compare prices across sources; where a product does not meet the specifications of the pricing product, it is not comparable to the prices of products within the description of the pricing product. Commerce's analysis similarly aims to identify comparable products with reference to physical characteristics. In claiming that the suggested pricing products are irrelevant oversimplifies the issue, especially where the evidence in support of Commerce's chosen path are primarily unsupported statements from Plaintiff. In short, absent further citation to evidence or explanation, Commerce's consideration of the weight of this evidence submitted for purposes of the ITC's injury investigation Commerce's Remand Results does not meet the substantial evidence standard.

LGC also raised several arguments detailing why a single-characteristic model match fails to capture the complexity of SAP as a product. LGC's Case Br. at 14-18 (C.R. 258, P.R. 174). Indeed, the only factual information on the record shows that guaranteed CRC levels alone are insufficient to confirm whether SAP will meet any given customer's product specifications and thus cannot be the sole basis for distinguishing between commercially meaningful product differences. *Id.*; *see also* LGC's Rebuttal Model Match Comments at 9, and Attachment 6 at p. 101:9-13 (P.R. 54-55). Commerce did not discuss the significance of customer specifications,

which detail characteristics beyond simply CRC, in its Remand Results.  While the Court found

unconvincing record evidence which supported including AUP and permeability as model match

characteristics, Commerce is still obligated to address why this argument does not render the

*Preliminary Determination* model match inaccurate and unusable and should do so in a second

remand.

LGC is cognizant of the fact that the Court's determination that the *Final Determination*

model match was not supported by substantial record evidence may have placed Commerce in

the uncomfortable position of needing to either attempt to further support its *Final*

*Determination* decision, fully revert to its *Preliminary Determination*, or chart some entirely new

path.  However, this situation does not relieve Commerce of its obligations under the substantial

evidence standard.  While Commerce may view the situation as a matter of choosing among two

imperfect options, as it stands, Commerce has not presented the Court with a position that is

supported by substantial record evidence.  Commerce must either further address these issues, or,

if it views the record as inadequate to support any determination, Commerce should add

information to the record or solicit additional information from parties so that Commerce has a

developed record that can support a decision.  This is not a situation where the agency is left with

a binary choice between two flawed alternatives, Commerce has the means to gather additional

information, and it should do so if necessary to support a decision with substantial record

evidence.

C.    **Commerce Must Address the Court's Remand on Plaintiff's Distortion Arguments**

As Commerce noted in its Remand Results, "the Court held that Commerce did not

adequately address the petitioner's concern that the way LGC defined the characteristics was

distortive and unusable and remanded the issue for further consideration."  Remand Results at 2;

*Remand Order* at 41-43.  The Court specifically noted that Commerce "did not fully address this issue and therefore remands for such consideration."  *Id*. at 43.  Despite this instruction, Commerce declined to "further consider the issue of potential manipulation."  Remand Results at 4.  As a result, Commerce's Remand Results are not in accordance with the Court's Remand Order because Commerce did not address this issue at all in its Remand Results.  While Commerce does not view responding to this point as an obligation because it revised its model match on remand, the Court did not make response to this issue on remand optional.  *See* Remand Results at 4; *Remand Order* at 41-43.  Given the importance of the Court placed on the potential for manipulation, Commerce should explain how its chosen methodology is not ripe for manipulation or distortion in consideration of LGC's argument that three broad groupings of SAP only by CRC results in diverse products classified within a single CONNUM.

## V.    **CONCLUSION**

For the foregoing reasons, Commerce's remand results with respect to its revised model match determination does not satisfy the Court's remand order and is unsupported by substantial record evidence.  As a result, Commerce's remand results cannot be sustained.  This Court should remand this matter with instruction for Commerce to provide a full explanation of the substantial evidence supporting the revised model match it adopted on remand, or should otherwise find that record evidence is insufficient to support Commerce's revised model match and issue an instruction to seek further information from interested parties.

Respectfully submitted,

 /s/ J. David Park
J. David Park
Henry D. Almond
Kang Woo Lee
Gina M. Colarusso
*Counsel to LG Chem, Ltd.*

Eric Johnson
*Consultant to LG Chem, Ltd.*

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone:  (202) 942-5000

**Dated: August 27, 2024**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE**

| | |
|---|---|
| THE AD HOC COALITION OF ) | |
| AMERICAN SAP PRODUCERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00010 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| LG CHEM, LTD., ) | |
| ) | |
| Defendant-Intervenor. ) | |

**CERTIFICATION OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

The undersigned hereby certifies that the attached Comments in Opposition to Commerce's Remand Redetermination, filed on August 27, 2024, contains 6,435 words, exclusive of the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare this brief. The brief therefore complies with the maximum 10,000 word count limitation as set forth in the Court's Chambers Procedures.

By:    /s/ J. David Park
       J. David Park

**Dated:  August 27, 2024**