**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE

| | |
|---|---|
| THE AD HOC COALITION OF AMERICAN SAP PRODUCERS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>LG CHEM, LTD.,<br><br>Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Court No. 23-00010<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

|  |  |
|---|---|
| | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| | PATRICIA M. MCCARTHY<br>Director |
| | L. MISHA PREHEIM<br>Assistant Director |
| OF COUNSEL: | |
| | KYLE S. BECKRICH<br>Trial Attorney |
| FEE PAUWELS<br>Attorney<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>U.S. Department of Commerce | U.S. Dept. of Justice<br>Civil Division/National Courts<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044 |
| November 12, 2024 | Attorneys for Defendant |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

BACKGROUND .............................................................................................................. 2

    I.    The Underlying Investigation ................................................................... 2

    II.    The Court's Remand Order........................................................................ 3

    III.    Commerce's Remand Redetermination ..................................................... 4

ARGUMENT .................................................................................................................... 5

    I.    Standard Of Review................................................................................... 5

    II.    Commerce's Decision To Adopt The Model Match Hierarchy Used In The *Preliminary Determination* Is Supported By Substantial Evidence And In Accordance With Law ............................................................................... 6

        A.    Legal Framework For Model Matching....................................... 6

        B.    Commerce's Adoption Of The Model Match Hierarchy Used In The *Preliminary Determination* Is Supported By Substantial Evidence ........... 8

            1.    Data On the Record Supports Commerce's Model Match Hierarchy................................................................... 10

            2.    Party Submissions On The Record Support Commerce's Model Match Hierarchy ............................................. 12

            3.    LG Chem's Challenges Are Unpersuasive ..................... 13

        C.    Commerce Properly Weighed All The Evidence In Its *Remand Redetermination* .................................................................... 16

    III.    Commerce Correctly Determined It Did Not Need To Further Consider The Issue Of Potential Manipulation............................................................... 19

CONCLUSION................................................................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Bohler Bleche GmbH & Co. v. United States*,
   324 F. Supp. 3d 1344 (Ct. Int'l Trade 2018) ........................................................ passim

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................... 5

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ............................................................................................... 5

*Fagersta Stainless AB v. United States*,
   577 F. Supp. 2d 1270 (Ct. Int'l Trade 2008) ....................................................... 7

*I.N.S. v. Elias-Zacarias*,
   502 U.S. 478 (1992) ............................................................................................... 6

*JTEKT Corp. v. United States*,
   37 F. Supp. 3d 1326 (Ct. Int'l Trade 2014) ......................................................... 7

*MacLean-Fogg Co. v. United States*,
   100 F.Supp.3d 1349 ............................................................................................... 5

*Manchester Tank & Equipment Co. v. United States*,
   483 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ................................................... 8, 9

*Maverick Tube Corp. v. United States*,
   107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015) ....................................................... 8

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008) ......................................................................... 20

*New World Pasta Co v. United States*,
   316 F. Supp. 2d 1338 (Ct. Int'l Trade 2004) ....................................................... 8

*NSK Ltd. v. United States*,
   217 F. Supp. 2d 1291 (Ct. Int'l Trade 2002) ....................................................... 7

*Pesquera Mares Australes Ltda. v. United States*,
   266 F.3d 1372 (Fed. Cir. 2001) ....................................................................... 6, 7

*Powell v. McCormack*,
   395 U.S. 486 (1969) ............................................................................................. 19

*Pro-Team Coil Nail Enter. Inc. v. United States*,
   587 F. Supp. 3d 1364 (Ct. Intl' Trade 2022) ................................................ 14, 15

*Rak LLC v. United States,*
   961 F. Supp. 2d 1274 (Ct. Int'l Trade 2014) ...................................................8

*Shandong Huarong General Corp. v. United States,*
   159 F. Supp. 2d 714 (Ct. Int'l Trade 2023) ...........................................16, 17

*Shandong Rongxin Import & Export Co. v. United States,*
   203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ...............................................15

*SKF USA, Inc. v. United States,*
   537 F.3d 1373 (Fed. Cir. 2008) ...............................................................8, 9

*Union Steel v. United States,*
   753 F. Supp. 2d 1317 (Ct. Int'l Trade 2011) ...............................................8

*Union Steel v. United States,*
   823 F. Supp. 2d 1346 (Ct. Int'l Trade 2012) ...............................................8

*Universal Camera Corp. v. United States,*
   340 U.S. 474 (1951) ................................................................................16

## Statutes

19 U.S.C. § 1677 .............................................................................. 7, 8, 10, 14

19 U.S.C. § 1677a ....................................................................................6

19 U.S.C. § 1677b ....................................................................................6

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE

_____
|                                          | )
| THE AD HOC COALITION OF                  | )
| AMERICAN SAP PRODUCERS,                  | )
|                                          | )
|                 Plaintiff,               | )
|                                          | )
|         v.                               | )
|                                          | )
| UNITED STATES,                           | )          Court No. 23-00010
|                                          | )
|                 Defendant,               | )
|                                          | )
|         and                              | )
|                                          | )
| LG CHEM, LTD.,                           | )
|                                          | )
|                 Defendant-Intervenor.    | )
_____ )

### <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and it is further

ORDERED that final judgment shall enter in favor of the United States.


Dated: _____, 2024          _____
             New York, NY                                    JUDGE

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE

| | |
|---|---|
| THE AD HOC COALITION OF<br>AMERICAN SAP PRODUCERS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>　　　and<br><br>LG CHEM, LTD.,<br><br>　　　　　Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Court No. 23-00010<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION</u>

Defendant, the United States, respectfully submits this response to the comments filed by defendant-intervenor LG Chem, Ltd. (LG Chem Cmts.), concerning the Department of Commerce's (Commerce's) final remand redetermination filed in accordance with this Court's decision and remand order in *The Ad Hoc Coalition of American SAP Producers v. United States*, Court No. 23-00010, Slip Op. 24-36 (Ct. Int'l Trade March 1, 2024) (*Remand Order*). *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 42, June 14, 2024 (*Remand Redetermination*); *see also* LG Chem Cmts., ECF No. 46.  The Court should sustain Commerce's *Remand Redetermination* because it complies with the *Remand Order*, is supported by substantial evidence, and is otherwise in accordance with law.

## BACKGROUND

The administrative determination under review is the final affirmative determination in the less-than-fair-value (LTFV) investigation of certain superabsorbent polymers (SAP) from the Republic of Korea (Korea). *See Certain Superabsorbent Polymers from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 65,035 (Dep't of Commerce Oct. 27, 2022) (*Final Determination*) (P.R. 188),[1] and accompanying Issues and Decision Memorandum (IDM) (P.R. 184).

## I.    The Underlying Investigation

This case concerns the model match criteria established in the underlying investigation. Prior to the preliminary determination, Commerce provided interested parties with the opportunity to comment on the appropriate physical characteristics of SAP to be included in the model match hierarchy of physical characteristics. The physical characteristics of SAP included in the model match hierarchy defines the proceeding's control numbers that would identify the foreign like product to be compared to subject merchandise in accordance with 19 U.S.C. § 1677(16)(A)-(C).

On December 13, 2021, both The Ad Hoc Coalition of American SAP Producers (the Coalition) and LG Chem submitted comments regarding product characteristics. *See* Petitioner Product Characteristics Cmts. (P.R. 42); LG Chem Product Characteristics Cmts. (P.R. 43). The Coalition asserted that the model match hierarchy should be limited to the characteristic of centrifugal retention capacity (CRC) in 6 g/g increments. Petitioner Product Characteristics Cmts at 1-2. LG Chem put forth a model match hierarchy consisting of absorbency under

---

[1] "P.R." and "C.R." refer to public and confidential documents, respectively, in the investigation record.

pressure (AUP), permeability (PERM), and CRC in 4 g/g increments, arguing that the smaller increments better accounted for the commercial significance of CRC.  LG Chem Product Characteristics Cmts at 2-7.

Commerce released its model match hierarchy on January 21, 2022, prior to releasing its preliminary determination.  Product Characteristics Memorandum (P.R. 89).  Commerce declined to use LG Chem's proposed model match hierarchy of CRC measured in 4 g/g increments, as well as LG Chem's two additional product characteristics (AUP and PERM) in the model match system (*i.e.*, LG Chem's submitted CONNUM2 system).  *Id*.  Commerce then based its preliminary determination on the adopted model match hierarchy that was limited to CRC in 6 g/g increments and excluded the additional product characteristics (*i.e.*, LG Chem's submitted CONNUM system).  *See Certain Superabsorbent Polymers from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 87 Fed. Reg. 34,647 (Dep't of Commerce June 7, 2022) (*Preliminary Determination*) (P.R. 154), and accompanying Preliminary Determination Memorandum (PDM) (P.R. 150) at 7-8.  However, for the *Final Determination*, Commerce revised the model match hierarchy to include LG Chem's proposed two additional characteristics and use LG Chem's proposed CRC characteristic reporting of 4 g/g increments, as it determined that the additional two characteristics and increments were commercially meaningful.

## II.    The Court's Remand Order

On March 1, 2024, this Court remanded Commerce's determination that AUP, PERM, and CRC at 4 g/g increments are commercially significant physical characteristics such that they should be included in the model match hierarchy.  *See Remand Order* at 36-37.  In particular, the

Court held that although Commerce is not required to adhere to the model match hierarchy it constructs in the early stages of a proceeding, Commerce's finding that the AUP and PERM characteristics are commercially significant was unsupported by substantial evidence on the record. *Id.* at 19-37. Further, the Court held that Commerce failed to provide substantial evidence in support of its finding that LG Chem's proposed 4 g/g increments for the CRC characteristic—which are narrower when compared to increments proposed by the Coalition— were more commercially significant than the increments initially adopted. *Id.* at 20-37. In particular, the Court found that Commerce's determination relied on a "few pieces of anecdotal information." *Id.* at 36. The Court also held that Commerce did not appear to verify the new physical characteristic information relied on in the *Final Determination* to calculate LG Chem's margin because Commerce explicitly verified only data fitting the original model match hierarchy, not data for the hierarchy it used in the *Final Determination*. *Id.* at 37-41. Finally, the Court held that Commerce did not adequately address the Coalition's concern that the way LG Chem defined the characteristics was distortive and unusable and remanded the issue for further consideration. *Id.*

**III.    Commerce's Remand Redetermination**

In its *Remand Redetermination*, Commerce reconsidered the model match hierarchy adopted in the *Final Determination* and identified CRC as the single commercially significant physical characteristic to be included in the model match hierarchy. *See Remand Redetermination* at 3-4. Further, Commerce reexamined the record and determined that it was devoid of additional evidence to support a finding that PERM and AUP are commercially significant. *Id.* Accordingly, consistent with the Court's decision, Commerce determined that

neither characteristic was commercially significant and thus excluded both from the model match hierarchy. *Id.*

In particular, Commerce revisited parties' comments on the record and found that the evidence demonstrated that SAP product differences were driven by customer preference, thus supporting a finding that CRC is the only commercially meaningful characteristic. *Id.* at 5-7, 12-14. Further, Commerce analyzed the cost data of SAP products when categorized using 4 g/g increments of CRC versus 6 g/g increments of CRC and determined that 6 g/g increment categories appropriately accounted for the commercial significance of CRC. *Id.* at 10-11. Commerce similarly analyzed price differences among SAP products and further found that existing price differences were not related to differences in CRC in 4 g/g increments, AUP, or PERM. *Id.* at 11.

Because Commerce elected to use 6 g/g increments of CRC and did not rely on AUP and or PERM, Commerce did not address the Court's concerns regarding potential manipulation with respect to using 4 g/g increments, AUP, and PERM. *Id.* at 4.

## **ARGUMENT**

I.    **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States,* 100 F.Supp.3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed.*

*Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted).  Instead, when, as here, Congress

has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries,

Commerce's conclusions may be set aside only if the record contains evidence "so compelling

that no reasonable factfinder" could reach the same conclusion.  *I.N.S. v. Elias-Zacarias,* 502

U.S. 478, 483-84 (1992).

**II.    Commerce's Decision To Adopt The Model Match Hierarchy Used In The *Preliminary Determination* Is Supported By Substantial Evidence And In Accordance With Law**

On remand, Commerce reconsidered the model match hierarchy adopted in the *Final*

*Determination* and found that the record supports a finding that CRC is the only commercially

significant physical characteristic for SAP.  *See Remand Redetermination* at 14.  Commerce

altered its model match hierarchy to include CRC in 6 g/g increments.  *Id.*  In doing so,

Commerce complied with the *Remand Order*.

**A.    Legal Framework For Model Matching**

To determine whether subject merchandise is being sold in the United States at less than

fair value, Commerce compares the price at which the merchandise is sold in the United States

(the export price) with the price of the product in the home market (the normal value).  *See* 19

U.S.C. §1677b(a); 19 U.S.C. § 1677a(a); 19 U.S.C. § 1677b(a)(1)(A)-(B).  The dumping margin

is the amount by which the normal value exceeds the export price.  *See* 19 U.S.C. § 1677(35)(A).

To calculate the dumping margin, Commerce must identify the foreign like product that will be

compared with the subject merchandise sold in the United States.  *Pesquera Mares Australes*

*Ltda. v. United States,* 266 F.3d 1372, 1375 (Fed. Cir. 2001).  Foreign like product means

merchandise in the first of the following categories:

A.  The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

B.  Merchandise –
i.   produced in the same country and by the same person as the subject merchandise,
ii.  like that merchandise in component material or materials and in the purposes for which used, and
iii. approximately equal in commercial value to that merchandise.

C.  Merchandise –
i.   produced in the same country and by the same person and of the same general class or kind as the subject merchandise,
ii.  like that merchandise in the purposes for which used, and
iii. which the administering authority determines may reasonably be compared with that merchandise.

19 U.S.C. § 1677(16)(A)-(C).  The statute thus establishes a hierarchy for identifying the foreign like product under which Commerce first tries to match subject merchandise sold in the United States with identical products sold in the home market. *Id.*; *JTEKT Corp. v. United States,* 37 F. Supp. 3d 1326, 1334 (Ct. Int'l Trade 2014); *NSK Ltd. v. United States,* 217 F. Supp. 2d 1291, 1299-1300 (Ct. Int'l Trade 2002).

"Identical" products do not have to be exactly the same.  *Pesquera Mares,* 266 F.3d at 1383.  Rather, "merchandise should be considered to be identical despite the existence of minor differences in physical characteristics, if those minor differences are not commercially significant."  *Id.* at 1384.  Commerce determines what constitutes "commercially significant" physical differences on a case-by-case basis.  *Fagersta Stainless AB v. United States,* 577 F. Supp. 2d 1270, 1279 (Ct. Int'l Trade 2008).  If it is not possible to identify identical merchandise, then Commerce matches subject merchandise with similar products sold in the home market.  *JTEKT Corp.,* 37 F. Supp. 3d at 1334.

The model-match methodology is based on a hierarchy of commercially significant product characteristics that Commerce uses to create control numbers (CONNUMS), which identify unique products for comparison. *JFB Rak LLC v. United States,* 961 F. Supp. 2d 1274,1283-84 (Ct. Int'l Trade 2014); *Union Steel v. United States,* 823 F. Supp. 2d 1346, 1349 (Ct. Int'l Trade 2012). Commerce's model-matching methodology is based on the physical characteristics of products. *See* 19 U.S.C. § 1677(16)(A). "Congress has granted Commerce considerable discretion to fashion the methodology used to determine what constitutes 'foreign like product' under the statute." *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1379 (Fed. Cir. 2008) (internal citations omitted). In developing its model match hierarchy, Commerce has "wide latitude" in selecting relevant characteristics, and "generally will recognize physical differences that are significant in terms of cost and price differences." *See Manchester Tank & Equipment Co. v. United States*, 483 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) (citing *New World Pasta Co v. United States*, 316 F. Supp. 2d 1338, 1354 (Ct. Int'l Trade 2004) (internal quotations omitted)). However, this Court has stated that "differences in costs do not constitute differences in products in and of themselves." *Maverick Tube Corp. v. United States,* 107 F. Supp. 3d 1318, 1330 (Ct. Int'l Trade 2015). While price and production cost differences are relevant to the determination of commercial significance, commercial significance requires asking whether such differences are "driven" by the relevant characteristic. *Bohler Bleche GmbH & Co. v. United States*, 324 F. Supp. 3d 1344, 1350 (Ct. Int'l Trade 2018); *see also Union Steel v. United States*, 753 F. Supp. 2d 1317, 1325 (Ct. Int'l Trade 2011).

**B.      Commerce's Adoption Of The Model Match Hierarchy Used In The *Preliminary Determination* Is Supported By Substantial Evidence**

According to LG Chem, Commerce has failed to support with substantial evidence its decision on remand to adopt the model match hierarchy used in the *Preliminary Determination*.

LG Chem Cmts. at 10-15.  Contrary to LG Chem's allegations, Commerce has adequately

demonstrated that the record evidence, namely Commerce's calculations and information

submitted by parties, support adopting CRC in 6 g/g increments as the sole product characteristic

for the investigation.

As we have noted, Commerce has substantial discretion in determining a model match

hierarchy for a particular order.  *See SKF USA*, 537 F.3d at 1379; *Manchester Tank*, 483 F. Supp.

3d at 1316.  However, Commerce's discretion must be supported by substantial evidence.

Because the Court found in its *Remand Order* that the evidence on which Commerce relied to

adopt its model match hierarchy in the *Final Determination* was not supported by substantial

evidence, and because Commerce could not identify additional evidence on the record in support

of its adoption, compliance with the *Remand Order* requires that Commerce change its model

match hierarchy.  *Remand Redetermination* at 1-2.

Importantly, Commerce's obligation to reassess the model match hierarchy adopted in

this investigation on remand does not render its changed decision unsupported by substantial

evidence.  In fact, as Commerce discussed in the *Remand Redetermination*, upon

reconsideration, Commerce determined that the record demonstrates that CRC is the only

commercially significant physical characteristic, and that its commercial significance is

accurately accounted for using 6 g/g increments.  *Id.* at 3-11.

With regard to AUP and PERM, the Court held in the *Remand Order*:  the

"evidence{relied upon by Commerce} would neither convince nor compel a reasonable person to

conclude that AUP and permeability are commercially significant."  *Remand Order* at 36.  In the

*Remand Redetermination*, Commerce determined that the record was devoid of additional,

unconsidered evidence in support of a finding that AUP and PERM are commercially significant.

As such, Commerce's determination to limit the model match hierarchy to one physical characteristic, *i.e.*, CRC, is in accordance with the law.

With regard to the appropriate increments for measuring CRC, the Court held that Commerce failed to provide sufficient evidence to support a finding that CRC is "more appropriately" measured in 4 g/g increments. *Remand Order* at 36. In reassessing the measurement of the CRC characteristic, Commerce made two distinct findings: first, that the record contained no additional information to support a finding that CRC measured in narrower increments of 4 g/g was commercially significant, and second, that the record affirmatively demonstrated that measuring CRC in 6 g/g increments adequately accounts for the commercial significance of the characteristic. *Remand Redetermination* at 5-11. Commerce thus complied with the Court's *Remand Order* and reanalyzed the record in search of additional evidence in support of its *Final Determination* model match hierarchy, and, after finding no additional evidence, determined that it does contain substantial evidence in support of adoption of the *Preliminary Determination* hierarchy.

### 1.    Data On The Record Supports Commerce's Model Match Hierarchy

On remand, Commerce identified and analyzed the record information supporting the adoption of CRC in 6 g/g increments. In particular, data on the record demonstrates that 6 g/g increments sufficiently account for the commercially meaningful differences attributable to various CRC levels in SAP products. *Remand Redetermination* at 10-11. As the Court held in the *Remand Order*, a finding that price differences demonstrate commercial significance necessitates a finding that "prices move specifically in relation to {the relevant characteristic}." *Remand Order* at 31. As noted, Commerce utilizes the model match hierarchy to define the foreign like product in accordance with 19 U.S.C. § 1677(16)(A)-(C), which in turn ensures

Commerce is able to calculate the most accurate antidumping duty rate attainable. A model match hierarchy that incorporates all relevant commercially significant physical characteristics ensures accurate product comparisons and avoids a scenario where Commerce "treats certain 'foreign like products' as 'identical' to certain exported products, even though customers would view those products as commercially distinct in both utility and value." *Bohler Bleche GmbH*, 324 F. Supp. 3d at 1350. Thus, when identifying the most accurate increments for measuring CRC, the appropriate analysis is whether any given increments sufficiently account for "commercially significant price or cost differences." *Remand Order* at 33.

Commerce carefully reanalyzed record data on remand. All parties agree that CRC is an instrumental product characteristic that should be accounted for in determining the foreign like product. *See Remand Order* at 28. As such, Commerce's task was to determine what CRC increments sufficiently account for the commercially meaningful differences attributable to various CRC levels in SAP products. To fulfill this obligation, Commerce analyzed the cost and sale data of SAP products categorized using LG Chem's proposed increments (adopted in the *Final Determination*), *i.e.*, 4 g/g increments resulting in five levels, and the Coalition's proposed increments (adopted in the *Preliminary Determination*), *i.e.*, 6 g/g increments resulting in three levels. *See Remand Redetermination* at 10-11. Commerce considered the extent to which each set of increments accounts for meaningful cost and price differences by revisiting a table provided by LG Chem calculating the percentage differences between the highest and lowest manufacturing cost CONNUM2s (*i.e.*, 4 g/g increments) and CONNUMs (*i.e.*, 6 g/g increments). *Id.* at 10. This resulted in repeated findings that showed categorizing SAP products using narrower 4 g/g increments had no demonstrable impact on the costs and prices of those products. *Id.* In analyzing the cost ranges within the 4 g/g increments, Commerce found that "these

differences appear to be driven primarily by certain {sic} {CONNUM2} subcategories with small production quantities." *Id.* (citing Petitioner Rebuttal Br. at 3-4 (P.R. 178, C.R. 259)).  In omitting the subcategories whose costs are demonstrably unrelated to CRC levels, Commerce found that "there are no significant cost differences among LGC's high-volume CONNUM2s, whether they fall within the same or different CONNUMs as defined by the model match." *Id.* at 10-11 (citing Petitioner Rebuttal Br. at 4).

Commerce's analysis of LG Chem's alternative CONNUM2 categories similarly supports Commerce's determination to adopt the *Preliminary Determination* hierarchy.  Specifically, the price data associated with SAP products categorized using 4 g/g increments fail to reveal any commercially meaningful differences in price that went unrecognized using the 6 g/g increment categories. *Id.* at 11.  Importantly, as both the Court and Commerce emphasized in the *Remand Order* and *Remand Redetermination*, respectively, the presence of variations in price does not ensure commercial significance.  *See Remand Order* at 30; *see also Remand Redetermination* at 11.  Such price differences are meaningless without evidence demonstrating "those differences *relate* to particular physical characteristics that have commercial significance."  *See Remand Order* at 30.  An analysis of SAP products categorized in 4 g/g increments of CRC did not reveal differences in price demonstrably tied to variations in CRC that were otherwise unaccounted for in the 6 g/g increment categories.  *See Remand Redetermination* at 11.  In short, the analysis of price data associated with LG Chem's proposed increments fails to articulate any commercially meaningful price differences unaccounted for by the 6 g/g increments.

       2.    Party Submissions On The Record Support Commerce's Model Match Hierarchy

The data on the record debunks LG Chem's assertion that Commerce, in its *Remand Determination*, has failed to "explain why this revised model match allows Commerce to make

comparatively more accurate product comparisons than the *Final Determination* model match." LG Chem Cmts. at 13.  Commerce has demonstrated that the data using 6 g/g increments of CRC account for all commercially meaningful price differences, while the data using 4 g/g increments fails to reveal otherwise unaccounted for price differences.  Still, other record evidence further supports Commerce's determination to adopt the *Preliminary Determination* hierarchy.  First, both the Coalition and Sumitomo Seika Polymers Korea Co. (SSPK), another Korean producer, explicitly stated that CRC was best measured in broader increments representing low, medium, and high CRC levels.  *Remand Redetermination* at 7; *see also* Petitioner Rebuttal Br. at 2; and SSPK Product Characteristics Rebuttal Cmts. at 2-3 (P.R. 53).  Though SSPK proposed broader increments, as the Court noted, "in doing so, it agreed with distinguishing CRC as low, intermediate, and high capacity."  *Remand Order* at 9.

Evidence throughout the record also demonstrates that AUP and PERM necessarily involve trade-offs with CRC, demonstrating a variety in customer preference, not an inherent commercial significance.  *Remand Redetermination* at 6, 12-13.  As Commerce explained, the relevance of customer preferences is also illustrated by marketing materials discussing the relevance of additional measuring parameters like AUP and PERM in creating SAP, meaning that only CRC has an industry-wide commercial significance, while other parameters are customer-specific.  *Id.* at 5-6, 12-13.  Accordingly, both the data and assertions on the record demonstrate that the commercial significance of CRC levels is accurately measured in 6 g/g increments.

3.    LG Chem's Challenges Are Unpersuasive

Commerce's *Remand Redetermination* demonstrates that the *Preliminary Determination* hierarchy is in accordance with law.  LG Chem's arguments to the contrary are unavailing.

First, LG Chem asserts that Commerce has "simply reduce{d} the complex model match issues raised during the course of the investigation." LG Chem Cmts. at 13. However, the model match hierarchy building process is only as complex as there are product characteristics that *result* in commercially significant changes in price or cost. *See Remand Order* at 35. As the Court itself noted, Commerce has on several occasions built a model match hierarchy with limited CONNUMs, including for chemical products similar to SAP. *Id.* In dismissing product characteristics and measuring increments because they do not impact price or cost, Commerce has simplified the relevant variations in SAP products in a manner consistent with its obligation to determine the most accurate foreign like product. *See* 19 U.S.C. § 1677(16)(A). This was not an improper reduction of the complex issues at hand by Commerce, but the appropriate application of the law and the record evidence.

Further, LG Chem repeatedly returns to Commerce's alleged obligation to reopen the record for further development. LG Chem Cmts. at 2, 9, 13-15, 21. LG Chem alleges that doing so would have fixed Commerce's error in selecting the "least-flawed alternative between two model match hierarchies which are both unsupported by substantial evidence." LG Chem Cmts. at 11 (internal quotations omitted). Commerce's decision not to reopen the record is reasonable and consistent with the *Remand Order*, as nothing in the *Remand Order* directs Commerce to reopen the record. Commerce has significant discretion to determine whether to reopen the record on remand. *See, e.g.*, *Pro-Team Coil Nail Enter. Inc. v. United States*, 587 F. Supp. 3d 1364, 1374 (Ct. Intl' Trade 2022) ("While Commerce retains significant discretion to determine whether to reopen the record on remand, in most cases, this is not something the court will require simply based on a plaintiff's argument that better information is available."). While a court may order Commerce to reopen the record if "extraordinary circumstances" require it, the

Court did not do so here. *Shandong Rongxin Import & Export Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017); *see generally Remand Order*. Further, there is no information missing from the record for Commerce to complete this redetermination. As discussed above, Commerce has demonstrated that its adoption of the *Preliminary Determination* hierarchy is supported by substantial evidence.

Finally, "it is incumbent upon parties to provide relevant information in accordance with the agency's procedures and deadlines." *Pro-Team Coil Nail Enter. Inc.*, 587 F. Supp. 3d at 1374. Parties had ample opportunity throughout the investigation to present evidence in support of their model match hierarchies. LG Chem itself notes that the hierarchy building process involved "numerous issues raised by multiple interested parties in multiple submissions." LG Chem Cmts. at 13. The record contains 12 different submissions discussing the model match hierarchy. *See* Petitioner Product Characteristic Cmts. (P.R. 42), LG Chem Product Characteristic Cmts. (P.R. 43), Petitioner Rebuttal Comments on Product Characteristics (P.R. 49), SSPK Product Characteristics Rebuttal Cmts (P.R. 53), LG Chem Product Characteristic Rebuttal Cmts. (P.R. 54-55), LG Chem Model Match Reconsideration Letter (P.R. 93, C.R. 53), Petitioner Response to Request for Reconsideration of the Model Match (P.R. 94), Petitioner Pre-Prelim Cmts. (P.R. 139, C.R. 177), LG Chem Pre-Prelim Cmts. (P.R. 142, C.R. 178), Petitioner Pre-Prelim Rebuttal Cmts. (P.R. 147), LG Chem Case Br. (P.R. 174, C.R. 258), and Petitioner Rebuttal Br. (P.R. 178, C.R. 259). LG Chem had many opportunities to submit factual information and argument in support of its preferred hierarchy but was unable to provide sufficient evidence in support thereof, choosing instead to repeatedly rely on the very evidence the Court has found insufficient. *Remand Order* at 36-37. To require Commerce now to reopen

the record despite demonstrative evidence on the record in support of its *Remand Redetermination* would undercut the parties' principal obligation to build the record.

### C.    Commerce Properly Weighed All The Evidence In Its *Remand Redetermination*

LG Chem further posits that Commerce's *Remand Redetermination* is not in accordance with law because Commerce failed to adequately address record evidence detracting from its model match hierarchy. LG Chem Cmts. at 15-21. In particular, LG Chem argues that Commerce has not accounted for evidence on the record both in support of the *Final Determination* model match hierarchy, and record evidence that runs counter to the adopted *Preliminary Determination* model match hierarchy. *Id.* at 16.

A finding that Commerce's *Remand Redetermination* is supported by substantial evidence necessarily involves "tak{ing} into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. United States*, 340 U.S. 474, 488 (1951). However, "some evidence that detracts from the agency's conclusion" is insufficient if Commerce's "factual findings are reasonable and supported by the record as a whole." *Shandong Huarong General Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2023).

LG Chem first argues that Commerce has inappropriately afforded greater weight to certified statements by the petitioner and SSPK, whereas it itself has provided certified statements that narrower 4 g/g CRC increments are "{t}he traditional classification." LG Chem Cmts. at 16 (citing LG Chem Product Characteristic Cmts. at 3). LG Chem further alleges that in doing so, Commerce has "ignore{ed}" the "documentation and evidence" LG Chem provided in support of its certified statements. LG Chem Cmts. at 16.

Contrary to LG Chem's assertions, Commerce has not afforded differing weights to parties' certified statements. In reviewing the record evidence, Commerce determined that both

16

the 6 g/g CONNUMs data and 4 g/g CONNUM2s data demonstrate that measuring CRC in 6 g/g increments sufficiently accounts for the commercial significance of the characteristic. *Remand Redetermination* at 10-12. This evidence supports the certified statements submitted by the Coalition and SSPK and demonstrates that the marketing materials LG Chem provided in support of its certified statements do not detract from Commerce's conclusions. Because cost differences in the CONNUMs data are attributable to factors unrelated to AUP and PERM or CRC in more narrow increments, marketing materials referencing the ability to "overcome the trade-off" relationship between the three characteristics do not undermine the fact that such characteristics do not dictate price. *See Remand Redetermination* at 13-14.

Second, LG Chem argues that Commerce has inadequately addressed evidence demonstrating "the existence of distinct products with less than a 20 percent range in CRC between them." LG Chem Cmts. at 18. In selecting a hierarchy using 6 g/g CRC increments, LG Chem alleges Commerce has "considerably oversimplifie{d}" the issue and failed to account for distinct products "recognized in the broader industry." *Id.* (citing *Bohler Bleche GmbH & Co. KG v. United States*, 324 F. Supp. 3d 1344, 1349 (Ct. Int'l Trade 2018)) (internal quotation omitted). LG Chem again mischaracterizes the value of record evidence and misapplies Commerce's commercial significance analysis. LG Chem ignores the Court's own conclusion that marketing materials referencing AUP and PERM, "when viewed in the context of the many SAP characteristics identified throughout this investigation," is "scant support" for a finding of commercial significance. *Remand Order* at 29. Further, LG Chem fails to explain how its cited record evidence demonstrates the existence of distinct products. Notably, Commerce analyzed record evidence and found that the evidence failed to demonstrate that characteristics beyond CRC create distinct SAP products. *Remand Redetermination* at 13. The referenced marketing

17

materials cannot be said to detract from Commerce's findings because they do little more than reference relevant considerations in the production of SAP (*i.e.*, AUP and PERM), and do not demonstrate that these characteristics create distinct products recognized in the broader industry.

Third, LG Chem renews its argument that the differing CRC ranges petitioner proposed for the parallel U.S. International Trade Commission (USITC) proceeding suggest Commerce's adopted model match hierarchy fails to meet the substantial evidence standard. LG Chem Cmts. at 18-20. As both the Court and Commerce have stated, the pricing products used in USITC proceedings can be irrelevant to Commerce's statutory directive to accurately define the foreign like product for the purpose of determining whether imported SAP is being sold, or likely to be sold, in the United States for less than fair value. *See Remand Order* at 34; *Remand Redetermination* at 14. As such, the pricing information used in the USITC parallel proceeding not only fails to detract from Commerce's determination, but also does little to support LG Chem's suggested 4 g/g increments of CRC. *Id.*

Finally, LG Chem argues that Commerce has failed to consider the commercial relevance of AUP and PERM and the relevance of customer specifications in distinguishing SAP products. LG Chem Cmts. at 20-21. The *Remand Redetermination* repeatedly addresses this concern and demonstrates that the many considerations and customer specifications relevant to the production of SAP do not indicate additional, unaccounted for, distinct SAP products. *See Remand Redetermination* at 5-6, 10-14. Commerce noted that customer preference and the inherent trade-off between CRC, PERM, and AUP in fact *support* a finding that the latter two do not indicate distinct SAP products to be accounted for in determining the foreign like product, as they demonstrate customer-specific requirements, not industry-wide product distinctions. *Id.* at

9-13.  This further supports Commerce's finding that categorizing CRC in 6 g/g increments is sufficient to account for distinct SAP products.

Commerce has demonstrated that the model match hierarchy adopted in the *Remand Redetermination* is supported by substantial evidence on the record and otherwise in accordance with law.  In doing so, Commerce has adequately addressed all evidence both supporting and detracting from its findings.

### III.    Commerce Correctly Determined It Did Not Need To Further Consider The Issue Of Potential Manipulation

In a last-ditch effort to advocate for a second remand, LG Chem argues that the Court's *Remand Order* instructions require Commerce to analyze whether its model match hierarchy is at risk of manipulation.  LG Chem Cmts. at 21-22.  The *Remand Order* addressed *the Coalition's* argument that "the new model match hierarchy promoted by LG Chem permits it to categorize identical products in more than one CONNUM, allowing manipulation, and reducing the accuracy of the dumping margin."  *Remand Order* at 41-42.  In particular, the Court found that Commerce failed to address the Coalition's concern that LG Chem's proposed model match hierarchy would allow LG Chem to manipulate its sales so that "products with identical physical characteristics could have different CONNUMs—or a single product could be classified in more than one CONNUM—based on the testing methodology for such characteristics."  *Id.* at 42.  LG Chem's call for further remand is unavailing both because this specific argument is moot, and because LG Chem failed to raise its own argument regarding the potential for manipulation or distortion until the very last hour in its comments in opposition to this *Remand Redetermination*.

An issue is moot when it is "no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496-97 (1969).  In its *Remand Redetermination*, Commerce revised the findings from its *Final Determination* and adopted the

19

model match hierarchy put forth by the Coalition – limiting CONNUMs to the level of CRC categorized by 6 g/g increments. As such, Commerce is no longer using the hierarchy that the Coalition argued opened the door for manipulation by mandatory respondents. LG Chem's ability to manipulate its reporting based on chosen testing methods is no longer a "live" concern, and thus the issue is moot. Commerce's *Remand Redetermination* is thus in accordance with the Court's *Remand Order*.

LG Chem further references the petitioner's manipulation concerns regarding the *Final Determination* hierarchy with hopes to make its own argument. At no point in the investigation did LG Chem articulate a concern for the potential for manipulation or distortion in using the *Preliminary Determination* hierarchy.[2] Accordingly, LG Chem has failed to exhaust any challenge to Commerce's adopted hierarchy as presenting a risk of manipulation. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008) (holding that a party fails to exhaust administrative remedies because it "should have argued to Commerce on remand, during the remand period," the argument it makes in Court).

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Remand Redetermination* and enter final judgment in favor of the United States.

---

[2] Further, we note that the Coalition's concern of a potential for manipulation and distortion is premised on the fact that LG Chem, as a mandatory respondent in this investigation, would be asked to assign the appropriate code when reporting the product characteristics associated with the products sold in its home market sales and U.S. sales. Because the Coalition's specific concern relates to the reporting of sales, any remaining concerns regarding manipulation and distortion would refer to LG Chem manipulating or distorting the dumping margin, not the Coalition. LG Chem's argument is baseless.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
FEE PAUWELS
Attorney
Office of the Chief Counsel
   for Trade Enforcement and Compliance
U.S. Department of Commerce

KYLE S. BECKRICH
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7644
E-mail: Kyle.beckrich@usdoj.gov

Dated: November 12, 2024

*Attorneys for Defendant United States*

21

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 5,810 words, including text, footnotes, and headings.

/s/Kyle S. Beckrich
Kyle S. Beckrich