Slip Op. 24-141

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - -x   Senior Judge Aquilino

THE AD HOC COALITION OF AMERICAN SAP    :
PRODUCERS,
                                        :
              Plaintiff,
                                        :
              v.                             Court No. 23-00010
                                        :
UNITED STATES,
                                        :
              Defendant,
                                        :
         -and-
                                        :
LG CHEM, LTD.,
                                        :
              Intervenor-Defendant.
                                        :
- - - - - - - - - - - - - - - - - - - - -x
```

Opinion

[Results of remand sustained.]

Decided: December 17, 2024

Stephen J. Orava, Jamieson L. Greer, Daniel L. Schneiderman, and Lucas A. Pires, King & Spaulding LLP, Washington, D.C., for the plaintiff.

Kyle S. Beckrich, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant. With him on the brief Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Patricia M. McCarthy, Director, and L. Misha Prehiem, Assistant Director. Of counsel on the brief Rachel Bogdan, Senior Attorney, Office of Chief Counsel for Enforcement and Compliance, U.S. Department of Commerce, Washington, D.C.

J. David Park, Henry D. Almond, Kang Woo Lee, Gina M. Colarusso, and Archana Rao P. Vasa, Arnold & Porter Kaye Scholer

LLP, Washington, D.C., for the intervenor-defendant, with Eric Johnson, Consultant.

AQUILINO, Senior Judge: The Coalition's[1] successful challenge to the model matching methodology utilized by the International Trade Administration ("ITA"[2]) of the U.S. Department of Commerce in the less than fair value investigation of superabsorbent polymers ("SAP") from Korea[3] necessitated remand in the prior opinion of the court, with which familiarity is presumed herein. See Ad Hoc Coalition of American SAP Producers v. United States, Slip Op. 24-26 (March 1, 2024). ITA's Final Results of Redetermination Pursuant to Court Remand ("Remand Results" or "Redetermination"), on which the Court retains jurisdiction under 28 U.S.C. §1581(c), are considered in this opinion.

A remand determination will be set aside if it is found to be "unsupported by substantial evidence on the record, or

---

[1] This opinion adheres to the abbreviations of Slip Op. 24-26 as well as treatment of the collective noun describing the plaintiff Ad Hoc Coalition of American SAP Producers ("Coalition") as a plural for ease of clarification among party references.

[2] Herein also "Commerce".

[3] Certain Superabsorbent Polymers from the Republic of Korea: Final Determination of Sales at Less Than Fair Value, 87 Fed.Reg. 65035 (Dep't Commerce Oct. 27, 2022), as explained in its accompanying issues and decision memorandum (Dep't Commerce Oct. 20, 2022) ("Final Determination").

otherwise not in accordance with law". See 19 U.S.C. §1516a(b)(1)(B)(i); e.g., *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 39 CIT ___, ___, 121 F.Supp.3d 1263, 1268 (2015). It is also reviewed for compliance with the order of remand. See, e.g., *Olympia Indus., Inc. v. United States*, 23 CIT 80, 82, 36 F.Supp.2d 414, 416 (1999).

The Remand Results are supported by the Coalition and opposed by LG Chem (herein also "LGC"). They can be sustained as follows.

I

A

Recall that when ITA solicited comments on the commercially significant qualities of superabsorbent polymers ("SAP"), in order to develop an appropriate model matching methodology, all parties agreed that the criteria should include a characteristic for the ability of SAP products to hold liquid, which the industry recognized as "centrifugal retention capacity" ("CRC") measured in grams of saline solution retained per gram of SAP ("g/g"). Interested parties argued for different CRC ranges. After considering comments, ITA decided on low, intermediate, and high grades of CRC based on 6 g/g divisions, as argued by the

Court No. 23-00010                                                         Page 4

Coalition[4].  Fact-finding including verification proceeded along those lines.

In its responses to ITA's questionnaires, LG Chem provided the information requested; it also submitted information for its five preferred groupings of CRC utilizing 4 g/g increments[5] as well as information for the two additional proposed product characteristics for SAP -- (1) absorbency under pressure ("AUP") or load ("AUL"), and (2) permeability ("PERM")[6] -- all of which ITA had initially declined to use but later adopted for its <u>Final Determination</u>.  This litigation ensued.

B

After considering the parties' briefs, the court remanded ITA's model match methodology for reconsideration.  <u>See generally</u> Slip Op. 24-26.  In particular, the court held that ITA is not

---

[4] To wit, (1) less than 30 g/g; (2) greater than 30 g/g but less than 36 g/g; and (3) greater than 36 g/g.

[5] To wit, (1) minimum or no guaranteed CRC of less than 26 g/g; (2) minimum guaranteed CRC of 26 g/g or more and less than 30 g/g; (3) minimum guaranteed CRC of 30 g/g or more and less than 34 g/g; (4) minimum guaranteed CRC of 34 g/g or more and less than 38 g/g; (5) minimum guaranteed CRC equal to or more than 38 g/g.

[6] LG Chem claimed that AUP indicates how well SAP responds to stress, while the proposed model match codes for AUP and AUL depended on the type of test performed, with a proposed cut-off threshold of 15 g/g for each test-based division.  LG Chem also claimed that PERM indicates the ability to pass liquid between SAP particles.

required to adhere to the model match hierarchy it constructs in the early stages of a proceeding but it had not pointed to substantial evidence on the record to support its findings on the commercial significance of the AUP and PERM characteristics as well as LG Chem's proposed 4 g/g increments for the CRC characteristic, as compared to the increments initially adopted. The court also held that ITA did not appear to have verified the new physical characteristic information relied upon in the Final Determination to calculate LG Chem's margin because ITA explicitly verified only data fitting the original model match hierarchy, not data for the "new" hierarchy it used in the Final Determination. Lastly, the court held that ITA had not adequately addressed the petitioner's concern that the way LGC defined the characteristics was distortive and unusable and remanded the issue for further consideration.

C

On remand, ITA reconsidered its model match hierarchy, and determined that, "because record evidence supports a model match hierarchy consisting of CRC in 6 g/g increments, and because there is no additional evidence on the record to bolster support for the model match hierarchy adopted in the Final Determination, it has adopted the product characteristics used in the Preliminary Determination." Remand Results at 2. ITA also explained that

because it revised the model match hierarchy, the concerns expressed in the prior opinion on whether the physical characteristics of AUP, PERM, and CRC at 4 g/g increments were sufficiently verified, and the issue of potential manipulation using a model match hierarchy with AUP, PERM, and CRC at 4 g/g increments, need not be further addressed or considered. Id. at 4. ITA recalculated LG Chem's weighted average margin accordingly. Id.

II

LG Chem's "Opposition to Remand Determination" ("Opposition") claims that, "[i]n its comments, LGC explained in detail that [ITA]'s simple rev[er]sion to the Preliminary Determination model match was unsupported by evidence or rationale on the record of the underlying investigation, and that [ITA] did not sufficiently revisit, review, and reweigh record evidence in support of its remand model match." Opposition at 7. That filing characterizes ITA's Remand Results as merely agreeing with the court's prior opinion that the Final Determination model match lacked substantial evidentiary support but lack a "full" explanation of why the Preliminary Determination model match in fact is supported by substantial evidence. See id. LG Chem claims

that, as compared to two "conclusory" statements[7] that ITA relied upon, allegedly as "sole" support for the <u>Preliminary Determination</u> model match, LG Chem submitted "significant" factual information and analysis which directly contradict" ITA"s <u>Preliminary Determination</u>.  <u>Id</u>. at 9.  Thus, an order for a second remand should ensue asking that ITA "provide a full explanation as to how all the entirety of the record evidence before (all of which was submitted by LGC) supports or detracts from its revised model match."[8]  <u>Id</u>. at 9-10.

In addition, LG Chem contends the <u>Remand Results</u> do not comply with the remand order and that a second remand is required

---

[7]  Specifically, LG Chem states that in order to address the court's remand, ITA simply stated that "the Court held that evidence demonstrates that AUP and PERM have no commercial significance or utility that is not already captured by the CRC product characteristic." Opposition at 10, quoting <u>Remand Results</u> at 6.  ITA also claimed to have "reexamined the record and determined that there is no information that would additionally support a finding that the characteristics of AUP and PERM are commercially significant such that they should be included in the model match hierarchy."  <u>Id</u>. quoting <u>Remand Results</u> at 6. Similarly, ITA found "no additional evidence on the record to support a finding that categorizing CRC in 4 g/g increments results in commercially significant price or cost differences."  <u>Id</u>. quoting <u>Remand Results</u> at 7. As a result, LG Chem claims ITA simply "adopted the model match hierarchy used in the Preliminary Determination."  <u>Id</u>. quoting <u>Remand Results</u> at 7.

[8]  LG Chem goes even further, arguing for "a second remand encouraging or directing ITA to seek additional information from parties on this issue."  Opposition at 9.

because ITA failed to further consider the Coalition's arguments as to why the <u>Final Determination</u> model match hierarchy was subject to distortion and manipulation, as "ordered."  See <u>id</u>. at 10.

The Coalition in response argues three points:

> First, all parties agree the model match hierarchy consisting of CRC in 6 g/g increments is commercially significant, and this finding was supported by substantial evidence.  Second, in contrast, this Court ruled that LGC's proposal of categorizing CRC in narrower 4g/g increments, and capturing permeability ("PERM") and absorbency under pressure ("AUP") characteristics, was not supported by substantial evidence.  Finally, there was no need to address the distortion and potential manipulation posed by LGC's preferred methodology, consistent this Court's remand order.

Coalition Comments in Support at 1.

Elaborating, the Coalition argue ITA's reversion to the original model match capturing CRC in 6 g/g is supported by substantial evidence, including "certified comments and product brochures, provided by the Petitioner, by Sumitomo Sika ("SSPK") (another Korean producer), and by LGC itself."  <u>Id</u>.:

> . . . In particular, the cited supporting evidence includes (1) petitioner's certified comments that CRC is "typically" measured using 6 g/g ranges, <u>see</u> Petitioner's Model Match Comments (Dec. 13, 2021) (P.R. 42) at 1; Petitioner's Model Match Rebuttal Comments (Dec. 23, 2021) (P.R. 49) at 6; and Petitioner's Pre-Preliminary Comments (May 11, 2022) (P.R. 139) at 1-3; (2) LGC's product brochure showing that CRC is simply described as "high capacity" or "low capacity," LGC's Initial Section A Questionnaire Response, (Jan. 19, 2022) (P.R. 77, 78),

at Exhibit A-25; and (3) SSPK's statements that differences in CRC were broadly categorized into low, intermediate, and high capacity grades, SSPK's Rebuttal Comments on Model Match (Dec. 23, 2021) (P.R. 53) at 2-3. This represents substantial evidence supporting the model match used in the Redetermination.

LGC contends that such evidence was insufficient. LGC's Comments at 10-15. LGC is incorrect, and its argument is internally inconsistent. LGC is not suggesting that 6 g/g differences in CRC are not commercially significant and thus should not be captured in the model match. To the contrary, LGC's position is that "categorizing CRC by increments of 6 g/g is overly broad and would result in products with commercially significant differences falling into the same category." Redetermination at 7.

This leads to the Coalition's second point. In particular, LGC argues that CRC should be defined with more granularity, so that even smaller differences of 4 g/g increments would be reflected in the model match. Id. If LGC's position is that even small (4 g/g) differences in CRC are commercially significant, such that they should be reflected in the model match, LGC cannot reasonably contend, as a logical matter, that larger (6 g/g) differences in CRC are not commercially significant.

In reality, LGC is arguing that its proposed alternative proposed model match -- based on CRC in 4 g/g increments, and also capturing permeability ("PERM") and absorbency under pressure ("AUP") -- would be preferable to a model match based solely on CRC in 6 g/g increments, because it would capture additional commercially significant characteristics. This Court, however, has found that the data and record materials cited by LGC as supposedly supporting its position "do not represent substantial evidence of the commercial significance of AUP, permeability, and 4 g/g CRC increments." Remand Order at 27. See also id. at 20-37 (evaluating the insufficiency of that evidence in detail). Commerce is now in agreement with the Court's analysis. On remand, Commerce considered all the evidence cited by LGC and

Court No. 23-00010                                                    Page 10

> explained in detail why it did not show commercially significant differences among products based on PERM, AUP, and CRC in 4 g/g increments. Redetermination at 10-14. Contrary to LGC's assertion, Commerce did not ignore any evidence. Given Commerce's analysis and its "considerable discretion" in selecting an appropriate model match, Redetermination at 7, citing Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1384 (Fed. Cir. 2001), there is no reason to remand the matter for further consideration.
>
> Finally, LGC contends that a remand is nonetheless required, because Commerce failed to comply with this Court's instructions at pages 41-43 of the Remand Order. LGC's Comments at 21-22. In particular, the Court instructed Commerce to address the Coalition's argument that LGC's proposed alternative model match created "a significant risk of manipulation," because it would have enabled a respondent to report the identical product into different CONNUMs based on the "type of testing" the respondent elected to perform. Remand Order at 41-43. Because Commerce did not employ LGC's proposed alternative model match, however, there was no reason for Commerce to address this flaw -- just as there was no reason for Commerce to address the failure to conduct the required verification of the alternative model match. See Remand Order at 41. The "susceptibility to manipulation" and "lack of verification" flaws in LGC's proposal would become relevant only if there were a second remand for Commerce to reconsider using the alternative model match. In this case, however, the Redetermination is supported by substantial evidence, and it should be affirmed.

Id. at 1-4.

                                III

LG Chem argues that the evidence of record to support the Coalition's 6 g/g divisions is not substantial. The implication is that the evidence cited in the Remand Results as support for

reverting to the Preliminary Determination model match divisions suffers from a similar lack of evidentiary robustness as LG Chem's preferred 4 g/g divisions.  However, the court is inclined to agree with the Coalition's interpretation of LG Chem's comments and argument on the Remand Results.

    To be clear, LG Chem is correct that the prior opinion did not preclude ITA from evaluating the record in support of its preferred 4 g/g divisions as well as its proposed AUP and PERM characteristics; the opinion only held that the record information cited as support for the Final Determination did not justify up-ending the original model match methodology based on ITA's own "compelling reason" standard.  See Slip Op. 24-26 at 36:

> To summarize, the agency apparently relied for the most part on a few pieces of anecdotal information as the sole factors weighing in favor of finding commercial significance among LG Chem's preferred product characteristics.  That is hardly a "robust" evidentiary basis for replacing the model match hierarchy.

See also, e.g., Fagersta Stainless AB v. United States, 32 CIT 889, 894, 577 F.Supp.2d, 1270, 1277 (2008) ("compelling reasons" for altering model match criteria must be proven by "compelling and convincing evidence").  At this stage, however, and as LG Chem also acknowledges (Opposition at 11), it is not the function of the court to re-weigh one set against the other, to determine which

Court No. 23-00010                                                    Page 12

model match is "better": it was ITA's task to choose "between two fairly conflicting views," and the court may not substitute its judgment even if its view would have been different "had the matter been before it de novo." Diversified Prod. Corp. v. United States, 6 CIT 155, 161, 572 F.Supp. 883, 888 (1983)(quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

> LG Chem contends this situation
>
> does not relieve Commerce of its obligations under the substantial evidence standard. While Commerce may view the situation as a matter of choosing among two imperfect options, as it stands, Commerce has not presented the Court with a position that is supported by substantial record evidence. Commerce must either further address these issues, or, if it views the record as inadequate to support any determination, Commerce should add information to the record or solicit additional information from parties so that Commerce has a developed record that can support a decision. This is not a situation where the agency is left with a binary choice between two flawed alternatives, Commerce has the means to gather additional information, and it should do so if necessary to support a decision with substantial record evidence.

Opposition at 21.

But, considering ITA's analysis on remand, the administrative record, and the parties' arguments with respect thereto, the court cannot conclude the Remand Results unsupported by substantial evidence, nor can it find noncompliance with its order of remand. As the Coalition argue, all the parties agreed

Court No. 23-00010 Page 13

that CRC is the primary physical characteristic of SAP; both the Coalition and Seika Polymers Korea Co., Ltd. also argued for "low," "intermediate," and "high" CRC groupings. The 6 g/g divisions apparently correspond to those groupings. "If LGC's position is that even small (4 g/g) differences in CRC are commercially significant, such that they should be reflected in the model match, LGC cannot reasonably contend, as a logical matter, that larger (6 g/g) differences in CRC are not commercially significant." Comments In Support at 2. ITA has "considerable" discretion in developing the methodology used for identifying a foreign like product. See <u>Pesquera Mares Australes Ltda. v. United States</u>, 266 F.3d 1372, 1384 (Fed.Cir. 2001). Under the circumstances at bar, the evidence cited in support of ITA's reverting to its preliminary model match hierarchy is to be "consider[ed]" substantial, to wit:

> (1) petitioner's certified comments that CRC is "typically" measured using 6 g/g ranges, <u>see</u> Petitioner's Model Match Comments (Dec. 13, 2021) (P.R. 42) at 1; Petitioner's Model Match Rebuttal Comments (Dec. 23, 2021) (P.R. 49) at 6; and Petitioner's Pre-Preliminary Comments (May 11, 2022) (P.R. 139) at 1-3; (2) LGC's product brochure showing that CRC is simply described as "high capacity" or "low capacity," LGC's Initial Section A Questionnaire Response, (Jan. 19, 2022) (P.R. 77, 78), at Exhibit A-25; and (3) SSPK's statements that differences in CRC were broadly categorized into low, intermediate, and high capacity grades, SSPK's Rebuttal Comments on Model Match (Dec. 23, 2021) (P.R. 53) at 2-3.

Comments In Support at 2.

IV

In view of the foregoing, ITA's <u>Remand Results</u> will be sustained.  Judgment to that effect will enter accordingly.

Decided: New York, New York
December 17, 2024

                                    <u>/s/  Thomas J. Aquilino, Jr.</u>
                                            Senior Judge